UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

_____

JOHN IGLINKSI and LINDA IGLINSKI,

        **Plaintiffs,**

      **v.**                                **Case No. 25-C-895**

UNITED STATES OF AMERICA,

        **Defendant.**

_____

## DECISION AND ORDER DENYING GOVERNMENT'S MOTION TO DISMISS

_____

On June 24, 2025, Plaintiffs John and Linda Iglinski commenced this action against Defendant United States of America, alleging improper denial of a tax refund. The case is before the court on the Government's motion to dismiss for failure to state a claim and/or lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(6) and 12(b)(1). The court has jurisdiction under 28 U.S.C. § 1331. For the reasons that follow, the Government's motion to dismiss will be denied.

### ALLEGATIONS OF THE COMPLAINT

Plaintiffs allege that, on December 29, 2020, Plaintiff John Iglinski sold his stock interest in a company called Seasons 4, Inc. Compl. ¶ 5, Dkt. No. 1. The sale provided for an initial payment at closing and sixteen subsequent quarterly installment payments, set to begin one year after closing. *Id.* ¶¶ 7–8. On March 26, 2021, Plaintiffs signed their joint 2021 Form 1040 tax return (the Original Return), which was mailed to the Internal Revenue Service (IRS) on April 6, 2021, and processed by the IRS on August 23, 2021. *Id.* ¶ 6. The Original Return treated the Stock Sale as the sale of a capital asset and included IRS Form 8949 (Sales and other Dispositions of Capital Assets), but reported only the initial payment of $1,317,127.65, not the quarterly

payments that would follow. *Id.* ¶¶ 7–8. The Original Return reported a tax due of $360,727, which was timely paid.

Sometime thereafter, Plaintiffs elected to opt out of the installment sale treatment of the Stock Sale and treat the sixteen quarterly payments as appropriately recognized in 2020. On March 1, 2022, some eleven months after they filed their Original Return, Plaintiffs signed an amended Form 1040 (the First Amended Return) that reported both the initial closing payment and the quarterly payments. *Id.* ¶ 9. The tax reported on the First Amended Return increased by $350,684 for a total tax of $711,411. Dkt. No. 1-2 at 1. Plaintiffs paid the additional tax reported on their First Amended Return on March 30, 2022. Dkt. No. 1-1 at 2.

Later, Plaintiffs learned that the Stock Sale qualified for a 75% partial gain exclusion under 26 U.S.C. § 1202. Compl. ¶ 10. Failing to account for the partial gain exclusion resulted in an overpayment of $416,779 to the IRS. *Id.* Plaintiffs signed a second amended Form 1040 (the Second Amended Return) reflecting the claim of a $416,779 refund on June 7, 2024 and mailed it on June 28, 2024. The return was processed by the IRS on July 9, 2024. *Id.* ¶ 11.

The IRS rejected Plaintiffs' refund as untimely on November 20, 2024. *Id.* ¶ 12. In its November letter, the IRS explained that it could not allow Plaintiffs' claim because it was filed more than three years after they had filed their tax return and more than two years after they had paid the tax due. On December 19, 2024, Plaintiffs appealed, arguing that the limitations period for the refund claim began to run after the First Amended Return was filed, not after the Original Return was filed. *Id.* ¶ 13. On March 10, 2025, the IRS responded, explaining that it could not process the refund claim because it had no proof of the First Amended Return filing. *Id.* ¶ 14. On April 25, 2025, Plaintiffs provided the IRS with records, including the Account Transcript with dates supporting their position. *Id.* Plaintiffs again argued that the limitations period began after

2

the First Amended Return was filed, and that the Second Amended Return and associated refund request was therefore timely. *Id.* ¶ 15. The IRS did not respond. *Id.*

## LEGAL STANDARD

The Government moves for dismissal under Fed. R. Civ. P. 12(b)(6) and 12(b)(1). Motions to dismiss brought under Rule 12(b)(6) test the sufficiency of the complaint to state a claim upon which relief can be granted. *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990); *see* Fed. R. Civ. P. 12(b)(6). When reviewing a motion to dismiss under Rule 12(b)(6), the court must accept all well-pleaded factual allegations as true and draw all inferences in the light most favorable to the non-moving party. *Gutierrez v. Peters*, 111 F.3d 1364, 1368–69 (7th Cir. 1997); *Mosley v. Klincar*, 947 F.2d 1338, 1339 (7th Cir. 1991).

Motions to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) challenge a court's subject matter jurisdiction. When reviewing a Rule 12(b)(1) motion, "the district court must accept as true all well-pleaded factual allegations and draw reasonable inferences in favor of the plaintiff." *Capitol Leasing Co. v. F.D.I.C.*, 999 F.2d 188, 191 (7th Cir. 1993) (citation omitted). The court "may properly look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists." *Evers v. Astrue*, 536 F.3d 651, 656–57 (7th Cir. 2008) (internal quotation marks and citation omitted).

## ANALYSIS

As a threshold matter, the Government concedes that the United States has conditionally waived its sovereign immunity from suit in the narrow area of tax refunds. But the Government points out that this waiver is conditioned upon a claim for a tax refund being "duly filed" and in compliance with certain procedural and temporal requirements in 26 U.S.C. § 7422(a) and § 6511.

3

Section 7422(a) states: "No suit or proceeding shall be maintained in any court for the recovery of any internal revenue tax alleged to have been erroneously or illegally assessed or collected, or of any penalty claimed to have been collected without authority, or of any sum alleged to have been excessive or in any manner wrongfully collected, until a claim for refund or credit has been duly filed with the Secretary, according to the provisions of law in that regard, and the regulations of the Secretary established in pursuance thereof." Section 6511 sets out the temporal requirements. It states in pertinent part:

> Claim for credit or refund of an overpayment of any tax imposed by this title in respect of which tax the taxpayer is required to file a *return shall be filed by the taxpayer within 3 years from the time the return was filed or 2 years from the time the tax was paid, whichever of such periods expires the later*, . . .

26 U.S.C. § 6511(a) (emphasis added). Absent adherence to the requirements, the Government argues, a claim for refund "fails to invoke the statutory waiver of sovereign immunity provided by 26 U.S.C. § 1346(a)." Dkt. No. 8-1 at 5–6 (citing *Kirsh v. United States*, 131 F. Supp. 2d 389, 391 (S.D.N.Y. 2000)). That is because "the terms of [the United States'] consent determine the scope of a reviewing court's authority to provide relief." *Id.* at 5 (citing *Bartley v. United States*, 123 F. 3d 466, 467–68 (7th Cir. 1997)).

The Government's argument is twofold: first, that this court has no jurisdiction to grant relief because the sovereign immunity waiver only applies to timely filings; and second, that the untimely filing is not entitled to relief even if jurisdiction existed. The Government argues that Plaintiffs' claim for a refund is untimely because it was filed on June 28, 2024, more than three years after the time the return was filed and more than two years from the time the tax was paid. In the Government's view, the operative return that triggers the running of the limitations period is the Original Return, which was deemed filed on April 15, 2021. *See* 26 U.S.C. § 6513 ("For purposes of section 6511, any return filed before the last day prescribed for the filing thereof shall

4

be considered as filed on such last day."). Because Plaintiffs' claim for refund was filed with their Second Amended Return on June 28, 2024, the Government claims that their claim is barred and the court has no jurisdiction to grant the relief they seek.

Plaintiffs, on the other hand, contend that the operative return is the First Amended Return in which they reported the additional installment payments. The First Amended Return, which was filed with the additional tax payment, was filed on March 30, 2022. Because their claim for a refund was filed within three years of that date, Plaintiffs argue that their claim is timely. At the very least, Plaintiffs argue that they are entitled to a refund on the amount of additional tax paid with the First Amended Return. In support of their argument, Plaintiffs cite *Greene v. United States*, 191 F.3d 1341 (Fed. Cir. 1999).

In *Greene*, the filer was the receiver for an insurance company required to shelter one-half of its underwriting income in a separate "policyholders surplus account" that would only retroactively become taxable after certain preconditions were met. *Id.* at 1341–42. The income deposited in the surplus account (the "phase 3 income") would become taxable "when 'for any two successive years the taxpayer is not a life insurance company.'" *Id.* When that occurred, the income became taxable in the last year that the taxpayer operated as a life insurance company. The receiver filed its 1983 tax return on September 17, 1984. Because it had been operating as a life insurance company, the receiver did not report its income from the separate account on that return. The company did not qualify as a life insurance company, however, in 1984 and 1985, and thus the previously excluded income then became taxable for calendar year 1983. The receiver therefore reported the income and paid the tax in the form of an amended 1983 tax return on July 9, 1990. *Id.* at 1342. The receiver later determined the tax had been paid in error, and on July 8, 1993, almost three years after filing the amended return, the receiver filed a claim for a refund.

5

The IRS denied the claim on the ground that it was time-barred under § 1611(a). The receiver filed a claim in the Court of Federal Claims, but that court agreed with the IRS and dismissed the claim as untimely.

The Federal Circuit reversed. Based on the plain language of the statute, the court concluded that the claim was timely because it was filed within three years of the time the return was filed. In so ruling, the court rejected the Government's contention that the return that triggered the limitations period was the original 1983 return:

> In this case, where the events giving rise to the tax necessarily took place after the taxable year, the return that starts the running of the statute is the return in which the taxpayer is required to or does report the income. Here, both parties concede that the phase 3 income was not required to be reported on GGAC's 1983 tax return; in fact, it could not be so reported because GGAC's liability had not been established at the time of the filing of that return. Therefore, contrary to the conclusion of the Court of Federal Claims, the 1983 return cannot be the return that starts the running of the three-year limitations period. Because there apparently was no date on which the return showing the phase 3 income was required to be filed, and hence no other such return was filed, the 1990 amended return is the only return that could have started the running of the limitations period. It reported the "overpayment of [the] tax in respect of which tax [the] taxpayer [was] required to file [the] return."

*Id.* at 1343.

Since at least a portion of the income on which Plaintiffs paid the tax for which they claim a refund was not reported until the First Amended Return was filed on March 30, 2022, Plaintiffs argue that their claim was timely filed. Their claim for a refund was filed on June 28, 2024, well within three years of that return.

The Government notes, however, that the statute requires the claim for a "refund of an overpayment of any tax imposed by this title *in respect of which tax the taxpayer is required to file a return* shall be filed within 3 years from the time the return is filed . . . ." 26 U.S.C. § 6511(a) (emphasis added). The Government then argues that because "the tax at issue in this case is an income tax, Plaintiffs were required to file an income tax return . . . , so Plaintiffs' original income

tax return filed in April 2021 started the three-year clock." Dkt. No. 10 at 2. But what the Government overlooks is that when Plaintiffs elected to report their sixteen quarterly payments as income received in 2020, they were required to file an amended return reporting the additional income and the tax due. It is that return, the First Amended Return, that started the limitations period running for the claim for a refund of the tax paid on the additional income. The First Amended Return did not restart the limitations period for the tax paid at the time of the Original Return; instead, it started a new limitations period for a claim for refund of the tax paid at that time.

The Government argues that this case is unlike *Greene* in that the taxpayer in that case could not have legally reported the phase 3 income when it filed its original 1983 return. This case is different, the Government contends, because there was no legal obstacle to Plaintiffs reporting all of the income from the sale, including the installment payments, on their 2020 return. Because they could have reported all the income on the 2020 return, the Government argues, that is the return that triggers the limitation period. And because Plaintiffs' claim for a refund was not filed until more than three years after the original return was filed, the Government claims it is barred.

The Government also points to Revenue Ruling 72-311, which concluded that an original return triggered the three-year rule in 26 U.S.C. § 6511(a), even when an intervening amended return reported additional tax. But Revenue Rulings, while sometimes helpful, do not have the force of law and do not bind this court. *See Wetzler v. Ill. CPA Soc. & Found. Ret. Income Plan*, 586 F.3d 1053, 1058 (7th Cir. 2009) ("Revenue rulings are not binding on this Court and we give them 'the lowest degree of deference' which equates to 'some deference' or 'respectful consideration.'"). Indeed, the Federal Circuit's decision in *Greene* itself is inconsistent with Revenue Ruling 72-311.

The Government's position finds further support in *Kaltreider Construction, Inc. v. United States*, 303 F.2d 366 (3d Cir. 1962), upon which the Revenue Ruling relies. There, the corporate taxpayer filed its income tax return for the year 1952 on March 16, 1953. On March 16, 1956, the corporation filed an amended return in which it showed an additional tax due for the year 1952 in the amount of $3,289.69, which it paid on the same date. On May 21, 1958, the Court of Appeals issued a decision holding that the income reported by the corporation in its 1956 amended return should have been reported and paid by the owners of the corporation. Shortly thereafter, the corporation filed a claim for refund of the $3,289.69 that it paid in 1956. *Id.* at 367. Even though the claim for refund was filed within three years of the amended return in which it was paid, the court agreed with the Government that it was barred. In so ruling, the court rejected the argument that the three-year period began to run from the time the amended return was filed on March 16, 1956. Quoting from a treatise on federal taxation, the court explained:

> When the return required by law has been filed and thereafter an amended return is filed, the statute of limitations begins to run from the date the original return was filed, and the filing of the amended return does not operate to extend the statute. The first return, however, must be complete and meet the statutory requirements; the statute of limitations will begin only upon the filing of a proper return.

*Id.* at 368 (quoting 10 MERTENS, FEDERAL INCOME TAXATION, § 57.15).

*Kaltreider* is unpersuasive, however, as it is inconsistent with the language and purpose of the statute. The statute does not use the phrase "original return." It states that "a claim for credit or refund of an overpayment of any tax imposed by this title in respect of which tax the taxpayer is required to file a return shall be filed by the taxpayer within 3 years from the time the return was filed . . . ." 26 U.S.C. § 6511. And in *Greene*, the court held that "the return that starts the running of the statute is the return in which the taxpayer is required to *or does report* the income." 191 F.3d at 1343 (italics added). In this case, Plaintiffs reported at least a portion of the income in their

8

First Amended Return.  Since they elected to treat the quarterly installment payments as income received in 2020, they were required to and did report the income on their First Amended Return. It would thus seem to follow that their claim is timely as to the refund they seek from the tax paid on the additional income they reported.  As the court explained in *In re Lamborn*:

> in cases involving taxpayer misreporting, the following general approach is proper, at least absent special circumstances which make it unfair or impractical: the limitations period for an original tax return should commence on the filing of the original return; an amended return should not toll the period as to the same taxes admitted to be owed in the original return; but an amended return should toll the period as to additional tax liability admitted for the first time in the amended return.

204 B.R. 999, 1005 (N.D. Okla. 1997).

This approach is also consistent with the purpose of the statute.  "The primary function of the statutory period of limitations is to preclude stale demands." *Crocker v. United States*, 563 F. Supp. 496, 500 (S.D.N.Y.1983) (citing *United States v. Memphis Cotton Oil Co.*, 288 U.S. 62, 71 (1932)).  Since the claim was filed within three years of the return reporting the income and paying the tax from which part of the refund is sought, the demand is no more stale than any other claim filed within three years of an original return.  And as the Fifth Circuit has noted, "Section 6511 is a broad provision permitting a taxpayer to recover any overpayment of any tax. . . . Courts will strain to interpret the language of Section 6511 allowing for refund of excess taxes paid in a way that will avoid hardship upon the taxpayer, subject only to the limitation that the plain language of the section will not be ignored."  *Glaze v. United States*, 641 F.2d 339, 343 (5th Cir. 1981) (citations omitted).

In sum, at least as the record now stands, the court is not convinced that Plaintiffs' claim for a refund is entirely barred as untimely.  The Government suggests that the fact that Plaintiffs' election to opt out of installment sale treatment of the transaction may have some bearing of the issue, Dkt. No. 8-1 at 2 n.2, but that argument is not developed.  Absent further development of

9

that argument or additional authority, the Government's motion (Dkt. No. 8) is denied and the case will proceed. The Clerk is directed to set this matter on the court's calendar for a Rule 16 scheduling conference.

**SO ORDERED** at Green Bay, Wisconsin this 24th day of November, 2025.

William C. Griesbach
United States District Judge